No. 26-1294

In the United States Court of Appeals
for the Sixth Circuit

# United States of America,

Plaintiff-Appellant,

v.

# Kyle Wagner,

Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 26-cr-20059 (Hon. Denise Page Hood)

## Reply Brief for the United States

Jerome F. Gorgon Jr.
United States Attorney

Danielle Asher
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9518
danielle.asher@usdoj.gov

# Table of Contents

# Table of Contents

Table of Authorities.............................................................................ii

Argument..........................................................................................1

The district court did not properly weigh Wagner's
dangerousness or nonappearance risk...............................................1

A.    Wagner misstates several facts. .............................................1

B.    There are no conditions that will adequately protect the
public and assure Wagner's appearance. .............................4

C.    Wagner relies on unconfirmed facts that are not part of the
record. .................................................................................10

Conclusion .......................................................................................12

Certificate of Compliance with Rule 32(a).............................................13

Certificate of Service ........................................................................14

Relevant District Court Documents......................................................15

# Table of Authorities

**<u>Cases</u>**

*Brandenburg v. Ohio,*
 395 U.S. 444 (1969)................................................................6

*United States v. Abrego,*
 787 F. Supp. 3d 830 (M.D. Tenn. 2025)................................................7

*United States v. Smith,*
 79 F.3d 1208 (D.C. Cir. 1996) ...........................................................2

*United States v. Wagner*, No. 26-mj-141 (D. Minn. 2026) ...................1, 8

**<u>Statutes</u>**

18 U.S.C. § 3142 ................................................................4

18 U.S.C. § 3142(g) ...........................................................7, 8, 10

## Argument

**The district court did not properly weigh Wagner's dangerousness or nonappearance risk.**

Wagner himself warned law enforcement after his arrest not to "let [him] back out" and expressed an intent to kill. *United States v. Wagner*, No. 26-mj-141, 2/5/2026 Hrg. Tr. at 21 (D. Minn. Feb. 5, 2026) (proffering the intent-to-kill statement at the initial detention hearing in Minneapolis after the prosecutor listened to the recording during Wagner's transport from his house to the booking cell, which has been provided in discovery). But although the district court heard this and other evidence showing Wagner's significant dangerousness and risk of nonappearance, it improperly discounted that evidence and released him on bond. This Court should reverse.

### A.    Wagner misstates several facts.

At the outset, Wagner misstates several facts that bear correcting.

*First*, Wagner describes the Eastern District of Michigan's pretrial services report as an "update [to] the original recommendation[.]" Wagner Br. 12. Not so. The Eastern District of Michigan *contradicted* the recommendation in the original pretrial services report based on the same relevant details. The District of Minnesota—the district that will

be forced to supervise him if the release order is affirmed—never changed its detention recommendation. The Eastern District of Michigan report was not more "thorough" either. *Id.* at 12. It contained the same basic biographical and criminal history as Minnesota's report, just with a little more detail and a few contradictions in Wagner's story (*e.g.*, Wagner used to abuse opioids and received treatment for it).

*Second*, the United States did not "ambush" Wagner's counsel with evidence of Wagner's dangerousness or nonappearance risk. *Id.* at 13. The district court acknowledged—and Wagner agreed—that it is common practice to proceed by proffer at a detention hearing. (R.24: 3/25/26 Hrg. Tr., 134–35). Indeed, "[a] pretrial detention hearing . . . is neither a discovery device for the defense nor a trial on the merits." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). And because it happens early in the proceedings—often while investigation is ongoing—it is routine to provide evidence shortly before or simply proffer evidence during the hearing.

The government followed this routine practice here. Shortly before the March 25, 2026, detention hearing, it produced to Wagner's counsel Wagner's messages with an unknown individual who wanted to kill

2

former high-ranking political figure J.P. In those messages, Wagner promised to pass information to his "team" who could help bring J.P. to "justice." During the hearing, it also proffered two messages about Wagner's attempt to locate N.S., which were also included in a discovery production earlier that day. Wagner's counsel viewed the messages about J.P. before the government proffered them at the hearing and does not dispute the accuracy of the proffer.

*Third*, Wagner's claim that the person he messaged about killing J.P. was an undercover agent "attempting to trick" him is both unsupported and irrelevant. Wagner Br. 14. In raising this accusation, Wagner attempts to distract from the import of his statements: he promised to "put [the information about J.P.] in the hands of [his] team"—his "family of friends"—who "like to know about people who deserve consequences." (R.24: 3/25/26 Hrg. Tr., 131–32). His willingness to coordinate with a would-be murderer and offer to pass the target's personal information to his friends who can dole out "consequences" proves his danger. Wagner Br. 20.

3

Finally, although a minor point, the United States notes that its opening brief complied with the word-count limit in this Court's briefing letter.

### B.     There are no conditions that will adequately protect the public and assure Wagner's appearance.

Much of Wagner's argument distracts from the relevant question: whether under 18 U.S.C. § 3142 the court can fashion conditions to protect the public and ensure Wagner's appearance. Wagner's repeated claim that this is a political prosecution, for example, is demonstrably untrue. *Contra* Wagner Br. 9–10. Wagner was charged because he broke the law when he doxed and threatened J.S.—conduct particularly concerning, given his escalating and specific calls for armed violence against federal law enforcement. In earlier briefing, the government noted Wagner's self-described political identification as a "crazy leftist" to provide context for his politically-motivated threats against his victim—not to justify its prosecution. *Contra id.* at 21.

Indeed, Wagner poses a danger to those across the political spectrum. As discussed below—but inexplicably discounted by Wagner and the district court—Wagner exchanged private messages with an unknown person sharing the personal information of J.P., a former

high-ranking official in the Clinton and Obama administrations, and discussed facilitating his murder. (R.24: 3/25/26 Hrg. Tr., 132–33, 139). The public requires protection from Wagner, who does not discriminate in his threats based on political ideology.

Nor is this case about headlines or chilling opposition. Wagner Br. 9–10. It is about protecting the public from someone who repeatedly called for his thousands of followers to physically assault federal law enforcement and their supporters—including by directing them to, among other things, "[g]et your f----- guns and stop" ICE at a specific Minneapolis intersection. And it is about protecting Wagner's doxing victim, J.S., whose personal information and phone number Wagner shared with his vast online audience. *See* Wagner Br. 6 (admitting he has a "highly visible and vocal social media presence"). Wagner also shared what he believed to be J.S.'s parents' home address, warning J.S. to "stay safe" after claiming that Wagner or his followers might come "knock[ing]" and would "see [him] soon."

Wagner attempts to hide behind what he calls "protected" First Amendment activity, but much of the speech that supports detention was not protected because it incited his followers to imminent, lawless

5

action. *Contra* Wagner Br. 19; *see also Brandenburg v. Ohio*, 395 U.S. 444, 477 (1969). In fact, Instagram found his "First Amendment-protected posts" so concerning that it voluntarily removed his account (before Wagner created a new one within days and continued his threatening posts). Wagner Br. 17.

Wagner also claims that he "repeatedly and expressly cautioned his followers against instigating violence," *id.* at 19, while ignoring his explicit, repeat, and escalating calls for physical violence:

- "We're done with peaceful protests now. The gloves come off and ICE needs to get out. Run for the hills, boys."

- "No, not talking about peaceful protests" or "polite conversations anymore... Get your f------ guns and stop these f------ people."

- "We need to put our hands on [ICE.]"

- "Put[] hands on these murderers."

- "This is where ICE has come to die... If that has to be done at the barrel of a gun, then let us have a little f------ fun."

(R.1: Complaint, 7, 16–17, 24, 26). These statements—especially the warning that he and his followers were "done with peaceful protests now"—refute Wagner's claim that he was merely urging "non-violent obstructive protest techniques." Wagner Br. 22–23. By late January,

6

Wagner's calls to violence were clear and unequivocal. Highlighting a few early statements while ignoring those that came later is precisely the "one-sided characterization of" his speech that Wagner complains about. *Id.* at 20. The best course is to review the full context of Wagner's statements, which show escalating calls for violence against federal law enforcement and their supporters at specific times and places to a wide online audience.

Similarly, Wagner misconstrues the scope of a detention hearing. Wagner Br. 12. A detention hearing is not limited to the charges or material included in the charging documents. *See, e.g., id.* at 18, n.8. And in assessing the broad factors in § 3142(g), the court must consider *all* of the underlying circumstances of the offense charged and *all* of a defendant's history and his characteristics. Weighing these factors naturally requires "a wide range of proof"—often far exceeding the more limited facts alleged in charging documents or later offered at trial. *United States v. Abrego*, 787 F. Supp. 3d 830, 841 (M.D. Tenn. 2025).

For § 3142(g) purposes, *all* of Wagner's statements and conduct are relevant. They show that Wagner was fomenting violence against federal law enforcement in general, as well as specific individuals. They

provide important context to consider the seriousness of his threat to J.S. And they show how Wagner's thousands of followers responded to his threats: sending money to help Wagner evade law enforcement (itself presenting a risk of nonappearance ignored by the district court), encouraging violence and gun use, and offering to travel from out of state to join the fight.

Wagner's focus on J.S.'s response to the threat is also an attempt to deflect. *Contra id.* at 18. Section 3142(g) is focused on *Wagner's* danger to any person or the community. There is "voluminous" evidence of Wagner's dangerousness, and the district court erred when it failed to meaningfully address that evidence. *United States v. Wagner*, Case No. 26-mj-0141 (D. Minn.), R.11: D. Minn. Det. Order, 3. And Wagner discounts the other victims, too—referring to them as "[p]hantom victims"—ignoring his concerning pattern of finding and spreading personal identifying information of those he opposes. *Id.* at 20.

Wagner also defends the district court's comments that appear to equate the public safety concerns of Wagner-style calls to violence and federal immigration enforcement. *Id.* at 24. The parties agree that the district court discounted Wagner's dangerousness because it viewed

federal immigration enforcement policy as similarly endangering public safety. Effectively excusing calls to violence against federal law enforcement and threats against private citizens because of disagreements with executive branch policy is deeply troubling and legally incorrect. This Court should reverse the district court's release order for this reason alone.

Wagner's post-arrest conduct—harassing, spitting on, and physically resisting agents—was much more than "[a] chaotic and hostile response." Wagner Br. 21. Because Wagner was not expecting his arrest, his response was genuine and uncalculated, giving this Court a clear picture of his views about the federal executive and judiciary. And this conduct matches his earlier promise to evade law enforcement.

Wagner claims that his "political identity and his fiery rhetoric" and not "his actual conduct" are driving the government's position, but he is the one who is ignoring or minimizing "his actual conduct." *Id.* Wagner's "actual conduct" shows that he will not be deterred from violence by the prospect of judicial sanctions.

9

### C.    Wagner relies on unconfirmed facts that are not part of the record.

Wagner's claim that he "remained in full compliance with the imposed conditions" while on bond for less than 11 full days is unverified. Wagner Br. 15–16. The appropriate party to decide Wagner's compliance is pretrial services, not Wagner. And the government has received no information either way about Wagner's conduct during his short time on bond.

Even if true, Wagner's temporary compliance means little. The United States filed its emergency stay motion the morning of March 27—less than 48 hours after Wagner's release. The best predictor of compliance is not the short period of time while Wagner knew this appeal was pending and was most likely to be on his best behavior. Wagner is right that "[t]he best predictor of future behavior is past behavior." Wagner Br. 25–26. But the strength of that adage comes from a total review of all a defendant's past behavior—not a few days when he is under a microscope.

Wagner also attempts to rely on his short release time to retroactively justify the district court's improper rationale for releasing him on bond. But the court turned § 3142(g) on its head when it asked

10

whether the government had ever seen someone "abide by their bond conditions even though *there's nothing to indicate they would do so.*" (R.27: 3/24/2026 Hrg. Tr., 34–35) (emphasis added). There was no evidence that Wagner would comply with the conditions imposed. So the court's unexplained assumption or speculation that Wagner might comply was error.

Wagner remains dangerous and a nonappearance risk—even with the district court's bond conditions. His danger is far more than just "fiery rhetoric"—it is his demonstrated pattern of inciting and threatening violence, his penchant to share personal identifying information, and his close connection to a "team" who can help with murder plots.

11

# Conclusion

The district court's release order should be reversed, and Wagner should be detained pending trial.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

/s/ Danielle Asher
Danielle Asher
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9518
danielle.asher@usdoj.gov

Dated: April 30, 2026

12

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(g) because, excluding the parts of the brief exempted by Rule 32(f), it contains 2,032 words. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Danielle Asher
Assistant United States Attorney

Dated: April 30, 2026

13

# Certificate of Service

I certify that on April 30, 2026, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

Jean Pierre Nogues, III, jean_nogues@fd.org

/s/ Danielle Asher
Assistant United States Attorney

14

## Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan case number 26-cr-20059:

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 7, 16–17, 24, 26 |
| 11 | D. Minn. Det. Order | 3 |
| 24 | 3/25/2026 Hrg. Tr. | 131–32, 134–35, 139 |
| 27 | 3/24/2026 Hrg. Tr. | 34–35 |