No. 26-1294

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 28, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | O R D E R |
| v. | ) | |
| | ) | |
| KYLE WAGNER, | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: HERMANDORFER, Circuit Judge.

Kyle Wagner is currently detained pending trial in the Eastern District of Michigan for one count of cyberstalking and one count of interstate communications involving threats. *See* 18 U.S.C. § 2261A(2); *id.* § 875(c).[1] By decision issued on August 12, 2026, this Court determined that Wagner's pretrial detention was warranted under the Bail Reform Act, 18 U.S.C. § 3142(g). Wagner now moves to recall this Court's mandate and stay it pending the disposition of a petition for a writ of certiorari in the Supreme Court of the United States. Under 6 Cir. I.O.P. 41(b), this motion is referred "as a single-judge matter, to the judge who wrote the opinion."

Additional background on these proceedings is set out in this Court's prior order, *see* D.E. 10 (6th Cir. Apr. 3, 2026), and opinion, *see United States v. Wagner*, 187 F.4th 372 (6th Cir. 2026). By way of summary, this appeal arose after the district court reversed a magistrate judge's detention order and released Wagner pending trial. The district court acknowledged that Wagner's charged conduct was "very serious" and that the Government had a "very strong argument that there was some protection of the public involved" in detaining Wagner. *Id.* at 380, 382 (quoting E.D. Mich., Detention Hearing Day 2 Tr., R.24, PageID 147, 149-50). But it reasoned that certain

[1] Wagner also faces a separate indictment in the District of Minnesota on charges including conspiracy to impede or injure a federal officer and solicitation to commit a crime of violence. *See* Indictment, R.1, pp. 2, 91 (No. 26-cr-00115-KMM-DTS) (D. Minn. June 11, 2026).

release conditions—like requiring Wagner to promise that he would only use a few, designated internet devices and avoid making further online threats—could mitigate the risk Wagner presented to public safety.

The Government appealed the district court's release order and sought an emergency stay of that order pending appeal. A panel of this Court granted a stay, which resulted in Wagner's detention through the course of the appellate proceedings.

On August 12, 2026, this Court issued an opinion reversing the district court's release order. *See Wagner*, 187 F.4th 372. The Court first noted that, since the 1985 decision in *United States v. Hazime*, 762 F.2d 34, our precedent implementing the Bail Reform Act has directed application of clear-error review for the district court's "factual findings" and de novo review for the "ultimate question whether pretrial detention is warranted." *Wagner*, 187 F.4th at 378 (brackets deleted) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing *Hazime*, 762 F.2d at 37)). The Court then reasoned that the Government had carried its burden of proving Wagner's dangerousness, citing, among other things, record evidence of Wagner's doxxing attempt, "direct calls for violence against federal agents and their supporters,"[2] and communications with a Signal user about killing a former government official. *Id.* at 375, 379-83. Finally, the Court disagreed that the district court's proposed conditions on Wagner's internet use would sufficiently mitigate the relevant public-safety risks. *Id.* at 383-85. That conclusion followed from Wagner's "particular history of internet activity" as well as from caselaw noting the potential inadequacies of electronic-access restrictions for online offenders. *Id.*

Judge Bloomekatz dissented. She reasoned that Bail Reform Act appeals should trigger a more "deferential approach" to reviewing the district court's "application of the facts to the pretrial detention standard." *Id.* at 393 (Bloomekatz, J., dissenting). And she deemed that standard satisfied based upon, among other things, her understanding of the broader "context" of Wagner's

---

[2] *See Wagner*, 187 F.4th at 37 ("[P]osts—appearing in the record verbatim—included calls for Wagner's followers to 'put[] hands on' ICE, 'fight' ICE, and '[g]et your f**king guns and stop' ICE. In some of those posts, Wagner explained that he was 'done with peaceful protests,' that he was 'not talking about peaceful protests anymore,' and that it was 'kill or be killed.'") (citations omitted).

online statements, Wagner's lack of a "violent criminal history," and the district court's release conditions. *Id.* at 395, 398; *see id.* at 400-03.

Wagner did not seek further review from this Court. And his trial is currently set to begin in early November 2026, though the parties have sought to continue that date.

Consistent with the governing rules, *see* Fed. R. App. P. 41(b), the mandate issued on September 3, 2026, *see United States v. Wagner*, No. 26-1294 (6th Cir. Sept. 3, 2026). On September 18, 2026, Wagner filed a petition for a writ of certiorari in the Supreme Court seeking review of this Court's decision and judgment ordering his pretrial detention. *See* Pet. for Writ of Cert., No. 26-391 (Sup. Ct. Sept. 18, 2026). He now moves this Court to recall and stay the mandate pending the Supreme Court's disposition of his petition. *See* Fed. R. App. P. 41(d). That step, Wagner contends, is necessary before he can seek interim stay relief of the detention decision from this Court and the Supreme Court.

Wagner did not seek to stay the mandate before its issuance. He thus "must overcome two hurdles if the relief requested is to be granted." *United States v. Holland*, 1 F.3d 454, 455 (7th Cir. 1993) (Ripple, J., in chambers). He must first show that this Court should recall the mandate now that it's been issued; he then must justify a stay of that mandate. *See id.*

Taking the recall request first, this Court has the inherent authority to recall its mandate. *Patterson v. Haskins*, 470 F.3d 645, 661-62 (6th Cir. 2006). But "such power should only be exercised in extraordinary circumstances because of the profound interests in repose attached to a court of appeals mandate." *United States v. Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005) (order). Exercise of this "last resort" power is justified only in the event of "grave, unforeseen contingencies." *Id.* (quoting *Calderon v. Thompson*, 523 U.S. 538, 550 (1998)). Examples include "'fraud upon the court, clarification of an outstanding mandate, and correction of a clerical mistake.'" *United States v. Murray*, 2 F. App'x 398, 399-400 (6th Cir. 2001) (order) (quoting *BellSouth Corp. v. FCC*, 96 F.3d 849, 852 (6th Cir. 1996)).

Wagner's motion "does not fit into any of th[ose] categories." *BellSouth Corp.*, 96 F.3d at 852. Nor does Wagner otherwise seek to justify his weekslong failure to seek any relief prior to

the mandate's issuance. That issuance, moreover, involved no "unforeseen" events; by virtue of this Court's prior stay order, Wagner had remained detained pending the Government's appeal.

Still, Wagner reads this Court's decisions to create a broader, catchall rule that permits recall of the mandate when a party's petition for certiorari "was still pending at the time the motion to recall the mandate was filed with this court." Wagner Recall and Stay Mot. 3. But Wagner's cited cases, *see id.*, don't sweep that far. Each instead acknowledged that the "rare" scenario may warrant recall "based on [a] decision" of the Supreme Court or the court of appeals that works a significant change in law affecting the rights of parties whose appellate proceedings are not yet final. *Saikaly*, 424 F.3d at 517-18 & n.2 (quoting *Murray*, 2 F. App'x at 400, in the course of denying recall); *see United States v. Crawford*, 422 F.3d 1145, 1146 (9th Cir. 2005) (recalling mandate for resentencing in light of pre-mandate issuance of "the Supreme Court's decision in *Blakely v. Washington*").

Nothing like that happened here. Instead, Wagner took the routine step of petitioning for a writ of certiorari within the time allotted and after the Court's mandate issued. If Wagner's automatic-recall-when-cert-pending rule were right, scores of parties could sit idle through a mandate's issuance and then later obtain recall by seeking cert. That rule would convert recalls from "contingencies" to a matter of course, *Calderon*, 523 U.S. at 550, contra the "strong public policy" in favor of the finality of judgments, *BellSouth Corp.*, 96 F.3d at 851. And while Wagner counters that a recall here is warranted so that he can move for interim stay relief in the Supreme Court, there was another pathway well trodden by parties in his position: Timely move to stay the mandate, which triggers a delay of the mandate that allows for interim-relief requests. *See* Fed. R. App. P. 41(b), (d)(1); *see also* 16AA Wright & Miller's Federal Practice & Procedure §§ 3987 & 3987.1 (5th ed., supp. Apr. 2026) (collecting cases); Gressman, et al., *Supreme Court Practice* 860-62 (9th ed. 2007) (collecting cases).

Wagner's failure to justify a recall of the mandate in turn forecloses this Court's staying that mandate. Nor does Wagner's case for a stay appear compelling on its own terms. To secure a stay pending the disposition of his cert petition, Wagner "must show that the petition would

present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). "That is a daunting standard." *White v. Plappert*, 137 F.4th 579, 581 (6th Cir. 2025) (quotation omitted). "Because stays issued pursuant to Rule 41 are tied to the certiorari process," the Rule 41 analysis "mirrors the Supreme Court's own test for granting stays pending the filing of a petition for certiorari." *Id.* Under that test, Wagner "must show (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Id.* (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam)). The Rule 41 merits inquiry thus puts lower-court judges in an unnatural spot: We "must perform the predictive function of anticipating the course of decision in the Supreme Court of the United States" with respect to a circuit decision just issued. *Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers) (cleaned up). Judges are to do this by "consider[ing] the issues that the applicant plans to raise in the certiorari petition in the context of the case history" and "the considerations that guide the Supreme Court in determining whether to issue a writ of certiorari." *Id.*; *see also* Sup. Ct. R. 10.

Here, Wagner's cert petition principally rests the case for Supreme Court intervention on the presence of a circuit split over which standard of review governs district courts' detention decisions under the Bail Reform Act. Cert. Pet. 12-23. But the bulk of the cited divergence dates back to the mid-1980s. *See id.*; *cf. Wagner*, 187 F.4th at 379 (discussing *Hazime*, 762 F.2d 34). Such "staleness" often undercuts need for intervention, particularly without evidence of meaningfully different practical outcomes. *See* Gressman, et al., at 248 ("A stale conflict sometimes may suggest that the disagreement is not a recurring and important one."); *cf. Layne & Bowler Corp. v. W. Well Works, Inc.*, 261 U.S. 387, 393 (1923). Nor is it apparent that the split is as lopsided or stark as Wagner's petition contends. The circuits generally apply clear-error review to factual findings. And several circuits Wagner places in his pro-deference camp exercise "independent review tempered by deference," Cert. Pet. 21-23—a standard presenting little apparent daylight with our de-novo-with-factual-deference approach. Wagner, citing the

dissenting opinion, casts the standard of review as outcome determinative. *Id.* at 3-4. But the dissent's core objection—over the meaning of what it viewed as ambiguous statements by Wagner—boils down to a factual disagreement that "does not implicate the circuit split" asserted. *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 246 (2021).

All of those factors cut against the Supreme Court's intervention, even spotting that splits can sometimes make a petition appealing. So do the problems with Wagner's particular vehicle. Among them: the odds that his pretrial-detention claim will soon become moot, *cf. Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982) (per curiam), as well as the wrinkle the independent indictment in Minnesota presents to the Government's potential arguments for detention, Cert. Pet. 12 n.1; *cf.* 18 U.S.C. § 3142(f)(2) (permitting reopening of detention record in light of new information).[3]

The final stay consideration requires balancing equities. Wagner has waived his Speedy Trial Act rights and agreed repeatedly to continue his trial date—from April, to July, to September, to November—and now jointly moves for another delay to early 2027. Cert. Pet. 35. Further, Wagner's petition for certiorari represents that he "does not oppose further delay" of his trial "if necessary to ensure that this Court can adequately review the Sixth Circuit's order prior to its expiration." *Id.* It thus appears that Wagner has offered to voluntarily extend his detention to insulate his petition from mootness. Though detention usually constitutes irreparable harm, it's dubious that the same treatment should extend to any "self-inflicted," strategic extension of detention pending the disposition of Wagner's petition for a writ of certiorari. *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003). Conversely, the Government's "law enforcement and public safety interests" weigh significantly in the equities calculus. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

---

[3] Even if Wagner showed likely Supreme Court review, he would still face the task of demonstrating "a reasonable possibility that five [justices] will vote to reverse the judgment of this court." *Holland*, 1 F.3d at 456.

For the above reasons, the motion for recall of the mandate and for a stay of the mandate pending disposition of Wagner's petition for a writ of certiorari is **DENIED**.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk